IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROBERT R. BAKER,<br><br>Plaintiff,<br><br>v.<br><br>DR. RICHARD GARDEN et al.<br><br>Defendants. | **MEMORANDUM DECISION &<br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION TO DISMISS**<br><br>Case No. 2:15-cv-668 CW<br><br>District Judge Clark Waddoups |

Plaintiff Robert R. Baker brings civil-rights claims against Utah State Prison (USP) medical personnel Richard Garden, Logan Clark, Joseph Coombs, Terry Jeffries, Raymond Merrill, Sidney Roberts, Sam Stone, and Kennon Tubbs.[1] *See* 42 U.S.C.S. § 1983 (2018). He asserts his federal constitutional rights were violated when Defendants (a) gave inadequate medical treatment, and (b) retaliated when he sought medical information.

Defendants counter with a motion to dismiss, asserting that--between Plaintiff's Amended Complaint and its attached copies of grievance documents and medical records--Plaintiff fails to state a claim upon which relief may be granted. The Court first considers the applicable statute of limitations, which Defendants did not address. The Court then dismisses one defendant and one claim, but not the others, and orders further litigation.

---

[1] Other defendants have already been dismissed: Turley, Bigelow, Crowther, Howard, Casper, Eddleman, Worthington, and Talbot. (Doc. No. 18, at 3.)

# I. STATUTE OF LIMITATIONS

"Utah's four-year residual statute of limitations . . . governs suits brought under [§] 1983." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995). And "[a]ctions under § 1983 normally accrue on the date of the [alleged] constitutional violation," *Garza v. Burnett*, 672 F.3d 1217, 1219 (10th Cir. 2012), as § 1983 claims "accrue when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Workman v. Jordan*, 32 F.3d 475, 482 (10th Cir. 1994). The Court notes that "[a] plaintiff need not know the full extent of his injuries before the statute of limitations begins to run," *Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994); *see also Romero v. Lander*, 461 F. App'x 661, 669 (2012) (1983 case), and "it is not necessary that a claimant know *all* of the evidence ultimately relied on for the cause of action to accrue." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993) (emphasis in original).

This action was filed on September 17, 2015; thus, any claims accruing before September 11, 2011 could be barred by the statute of limitations.

Court may raise the statute of limitations affirmative defense *sua sponte* when it is "clear from the face of the complaint [and is] rooted in adequately developed facts." *Fratus*, 49 F.3d at 674-75. This is true as to the following claims:

(1) Defendant Kennon Tubbs: Allegation that, on October 4, 2005, Defendant Tubbs consulted Plaintiff regarding neuropathy and pressure sores, then told Plaintiff that he would have to buy shoes at the commissary instead of providing special shoes.

(2) Defendant Logan Clark: Allegation that, before October 28, 2010, Defendant Clark refused to provide medical sports shoe to Plaintiff. (Inmate Grievance Form, Am. Compl., Doc 13, at 58.)

(3) Defendant Terry Jeffries: Allegation that, on October 28, 2010, Defendant Jeffries refused to provide authorization for well-fitted shoes. (*Id.*)

(4) Defendant Sam Stone: Allegation that, on May 5, 2010, Defendant Stone delivered ill-fitting slippers instead of well-fitted shoes. Indeed, "Officer Stone refused to supply well-fitted shoes, claiming inmates were selling them for commissary." (Am. Compl, Doc. No. 13, at 14.)

"When a district court believes it is likely that a pro se prisoner's § 1983 complaint is dismissible on the basis of the state's statute of limitations, the court may issue a show cause order giving the plaintiff an opportunity to explain why the statute of limitations should not be tolled." *Arroyo v. Starks*, 589 F.3d 1091, 1097 (10th Cir. 2009).

The Court does so here, requiring Plaintiff to within thirty days show cause why the statute of limitations should be tolled as to ONLY the four claims and defendants listed (1) through (4) in this section.

## II. MOTION TO DISMISS

### A. STANDARD OF REVIEW

In evaluating the propriety of dismissing a complaint for failure to state a claim upon which relief may be granted, this Court takes all well-pleaded factual assertions as true and regards them in a light most advantageous to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is appropriate when, viewing those facts as true, the plaintiff has not posed a "plausible" right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*,

550 U.S. at 556). When a civil rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the Court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Twombly*, 550 U.S. at 554-55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original).

This Court must construe these pro se "'pleadings liberally,' applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citations omitted). In the Tenth Circuit, this means that if this Court can reasonably read the pleadings "to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam)). Dismissing the complaint "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v.*

*Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

### B. AFFIRMATIVE LINK

The facts must clearly show what each individual defendant did to violate Plaintiff's civil rights. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating personal participation defendant is essential allegation in civil-rights action). This means that Plaintiff must "'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, No. 08-2222, slip op. at 4 (10th Cir. July 20, 2009) (unpublished) (emphasis in original) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). Plaintiff may not succeed in a claim based solely on supervisory liability. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (stating supervisory status alone is insufficient to support liability under § 1983). Nor does "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff . . . establish personal participation under § 1983." *Gallagher v. Shelton*, No. 09-3113, 2009 U.S. App. LEXIS 25787, at *11 (10th Cir. Nov. 24, 2009).

Considering these guidelines, the Court concludes that Plaintiff has done nothing to affirmatively link Defendant Garden to his claims, but has instead identified him as merely a supervisor or bystander--and has not tied any material facts to him. Plaintiff's claims against this defendant therefore may not survive further. And Defendant Garden is thus dismissed.

### C. RETALIATION CLAIM

Plaintiff asserts that his medical clearances for a shower chair, bottom bunk and certain shoes--apparently based on his multiple-sclerosis (MS) diagnosis--were revoked because he requested the "Medical Operations Manual" through the Government Records Access and

5

Management Act (GRAMA). The only link he makes between the revocation of his clearances and his request is timing: He made a successful GRAMA request and within twenty-five days (on January 18, 2013) his medical clearances were revoked. He raised the motive of retaliation individually with Defendants Jeffries, Roberts, and Garden. Defendants Jeffries and Roberts seemed to indicate that the medical clearances had been revoked while they anticipated the results of an MRI to verify whether Plaintiff indeed had MS.

"It is well-settled that '[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts.'" *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (quoting *Smith*, 899 F.2d at 947). To show retaliation, Plaintiff must prove three elements: (1) Plaintiff was involved in "constitutionally protected activity"; (2) Defendants' behavior injured Plaintiff in a way that "would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) Defendants' injurious behavior was "substantially motivated" as a reaction to Plaintiff's constitutionally protected conduct. *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

The Court assumes--for purposes of this Order only--that the first two elements are met. *See Ellis v. Franco*, No. CIV 15-0848, 2017 WL 3052503, at *8 (D.N.M. July 12, 2018). The Court next considers whether (based on the facts assumed to be true in the Amended Complaint and attachments) Defendants' behavior (i.e., revoking medical clearances) was substantially motivated by their knowledge of Plaintiff successfully requesting the medical manual.

"[I]t is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Thus, "to satisfy the third prong of the First Amendment test, an inmate must allege specific facts

showing that '*but for* the retaliatory motive, the incidents to which he refers . . . would not have taken place.'" *Banks v. Katzenmeyer*, 645 F. App'x 770, 772 (10th Cir. 2016) (emphasis added) (quoting *Peterson,* 149 F.3d at 1144 (internal quotation marks omitted)). This is a "heightened standard" that requires that Plaintiff must show "a triable issue not only that retaliation for [requesting the medical manual] played a role in [revocation of medical clearances] but that such retaliation was the decisive factor." *Strope v. McKune*, 382 F. App'x 705, 710 (10th Cir. 2010) (unpublished); *see also Smith,* 899 F.2d at 949 (stating plaintiff must "prove that the actual motivating factor behind defendants' actions was retaliation for his prior or current litigation"); *Strope v. Cummings*, 381 F. App'x 878, 884 (10th Cir. 2010) (unpublished) ("Keeping in mind the rigorous burden placed on Strope to show not only that a retaliatory motive may have played some role in his transfer but that such a motive was the strict but-for cause of his transfer, we conclude that he has failed to make the necessary showing on this element to defeat summary judgment, i.e., his evidence was 'merely colorable' at best and not 'significantly probative.'") (citations omitted). Therefore, it was critical to Plaintiff's avoidance of dismissal that he assert facts detracting from Defendants' alternative justifications for the medical-clearance revocation. *See McKune*, 382 F. App'x at 710.

Still, Plaintiff asserted no facts to undermine Defendants' alternative justifications. *See id*. Instead, his "attribution of retaliatory motive is conjectural and conclusory" and he *actually asserted* the facts of Defendants' alternative justifications; after all, all the facts relied on by the Court here come from Plaintiff's amended complaint and attachments. *Cummings*, 381 F. App'x at 883; *see also Banks*, 645 F. App'x at 774 n.2 ("A plaintiff's subjective beliefs about why the government took action, without facts to back up those beliefs, are not sufficient to create a

genuine issue of fact concerning [a] First Amendment retaliation claim." (internal quotation marks and citation omitted) (alteration in original)); *Ellis*, 2017 U.S. Dist. LEXIS 108683, at *21 ("An inmate's mere speculation that actions taken by correctional officials were in retaliation for the exercise of his First Amendment rights cannot defeat summary judgment.") While he may very well have participated in the assertedly protected activity of requesting the medical manual through GRAMA for purposes of pursuing grievances and a potential lawsuit, that by itself does not provide the required nexus for his retaliation claim. *See id*. "If it did, litigious prisoners could claim retaliation over every perceived slight and resist [defendant arguments to the contrary] simply by pointing to their litigiousness." *Id*. Of course, Plaintiff was not inoculated from standard conditions of confinement simply because he was preparing grievances and possibly a lawsuit. *See id*. The Tenth Circuit has "consistently held that temporal proximity between protected activity and a challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim." *Id*. While Plaintiff argues a time correlation, he does not show other circumstantial evidence that might strengthen his hand--e.g., other "coincidences," or patterns of behavior. *See Smith*, 899 F.2d at 949.

All that is left are Defendants' explanations--found in Plaintiff-provided material--that the medical clearances were revoked because they were based on a diagnosis of multiple sclerosis that had not been confirmed yet by prison medical staff, who then arranged to have it confirmed with an MRI. *See id*. Even if Plaintiff firmly believes that the timing of the medical-clearance revocations were closely tied together and could arouse suspicion that the events were correlated, "temporal proximity per se is insufficient to show that the stated explanation for a challenged action is pretextual." *Id*.; *see also Smith v. Drawbridge*, No. CIV-16-1135-HE, 2017

8

U.S. Dist. LEXIS 175923, at *27 (W.D. Okla. Sept. 8, 2017) (report & recommendation) (stating "'suspicious timing,' without more, is insufficient to support a reasonable inference that these actions" were taken because Plaintiff exercised constitutional rights). Plaintiff has himself provided facts that Defendants "have come forward with reasons for . . . action taken against [Plaintiff]." *Northington v. Zavaras*, No. 99-1184, 2000 U.S. App. LEXIS 19113, at *10 (10th Cir. August 10, 2000) (unpublished).

Finally, the factual allegations give no inkling that Defendants knew of Plaintiff's GRAMA request. So, it does not follow that Defendants revoked Plaintiff's medical clearances to retaliate for the request.

Plaintiff's retaliation claim fails due to his factual allegations showing that Defendants had another motive for revoking his clearances (need to confirm MS diagnosis) aside from potential retaliation for his GRAMA request. The retaliation claim is thus dismissed.

### D. INADEQUATE-MEDICAL-CARE CLAIMS

### 1. PLAINTIFF'S CLAIMS SURVIVE MOTION TO DISMISS.

Plaintiff argues Defendants' actions violated his Eighth Amendment rights--i.e., Defendants' inadequate medical care equaled cruel and unusual punishment. Defendants move to dismiss, contending Plaintiff has not stated a claim upon which relief may be granted.

The Eighth Amendment's ban on cruel and unusual punishment requires prison officials to "provide humane conditions of confinement" including "adequate . . . medical care." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)). To state a cognizable claim under the Eighth Amendment for failure to provide proper medical care, "a prisoner must allege acts or omissions *sufficiently harmful* to evidence

deliberate indifference to serious medical needs." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (emphasis in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Any Eighth Amendment claim must be evaluated under objective and subjective prongs: (1) "Was the deprivation sufficiently serious?" And, if so, (2) "Did the officials act with a sufficiently culpable state of mind?" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Under the objective prong, a medical need is "sufficiently serious . . .if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (citations and quotation marks omitted).

The subjective component requires the plaintiff to show that prison officials were consciously aware that the prisoner faced a substantial risk of harm and wantonly disregarded the risk "by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "[T]he 'inadvertent failure to provide adequate medical care' tantamount to negligence does not satisfy the deliberate indifference standard." *Sparks v. Singh*, 690 F. App'x 598, 604 (10th Cir. 2017) (unpublished) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). Furthermore, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corrs.,* 165 F.3d 803, 811 10th Cir. 1999); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation.").

Delay in receiving treatment is cognizable only if the delay was caused by deliberate indifference and resulted in substantial harm. *Olson,* 9 F.3d at 1477. "[I]n the context of a

missed diagnosis or delayed referral, there must be direct or circumstantial evidence that 'the need for additional treatment or referral to a medical specialist is obvious,'" and "'where a doctor merely exercises his considered medical judgment,'" no deliberate indifference exists. *Sparks*, 690 F. App'x at 604 (quoting *Self v. Crum*, 439 F.3d 1227, 1231-32 (10th Cir. 2006)).

The Court assumes, for purposes of this Order only, that Plaintiff's medical issues were objectively serious (because this consideration has not been addressed adequately by the parties at this point and Plaintiff ended up with his toes amputated after all). The remaining question then is whether Defendants were deliberately indifferent to Plaintiff's medical needs. The Court goes through the remaining Defendants one by one to determine the facts--liberally construed-- that state an inadequate-medical-care-claim.

(1) Defendant Kennon Tubbs: Allegation that, on October 4, 2005, Defendant Tubbs consulted Plaintiff regarding neuropathy and pressure sores, then told Plaintiff that he would have to buy shoes at the commissary instead of providing the special shoes recommended by a specialist. (As stated above, this is a claim that must be reviewed for statute-of-limitations concerns before being addressed on the merits.)

(2) Defendant Logan Clark: Allegation that, before October 28, 2010, Defendant Clark refused to provide medical sports shoe needed by Plaintiff. (Inmate Grievance Form, Am. Compl., Doc 13, at 58.) (As stated above, this is a claim that must be reviewed for statute-of-limitations concerns before being addressed on the merits.)

(3) Defendant Terry Jeffries: (a) Allegation that, on October 28, 2010, Defendant Jeffries refused to provide authorization for well-fitted shoes. (*Id.*) (As stated above, this is a claim that must be reviewed for statute-of-limitations concerns before being addressed on the merits.) (b)

Allegation that, around February 25, 2013, Defendant Jeffries withheld vital medications from Plaintiff. (Inmate Grievance Form, Am. Compl., Doc. No. 13, at 65.)

(4) Defendant Sam Stone: Allegation that on May 5, 2010, Defendant Stone delivered ill-fitting slippers instead of well-fitted shoes. Indeed, "Officer Stone refused to supply well-fitted shoes, claiming inmates were selling them for commissary." (Am. Compl, Doc. No. 13, at 14.) (As stated above, this is a claim that must be reviewed for statute-of-limitations concerns before being addressed on the merits.)

(5) Defendant Sidney Roberts: Allegation that, on February 19, 2013, Plaintiff consulted with Defendant Roberts "about the loss of his medications and all of his clearances being revoked," but "Roberts refused to renew plaintiff's medication or reinstate his medical clearances." (Am. Compl., Doc. No. 13, at 17.)

(6) Defendant Joseph Coombs: Allegation that, in Spring of 2013, Defendant Coombs cut open a pressure sore, causing infection.

(7) Defendant Ray Merrill: Allegation that, on July 22, 2013, Defendant Merrill examined "serious pressure ulcer caused by ill-fitting prison issued 'wide shoes' . . . and denied the use of shower shoe for ulcerated foot." (*Id*. at 20.)

Plaintiff's explicit or implicit assertion for each of these defendants is that each knew of Plaintiff's underlying medical history and ongoing complaints and risks yet withheld something (e.g., disinfection implements or well-fitting shoes) that resulted in serious medical harm (e.g., infection or amputated toes). Plaintiff has thus stated a claim as to each of these seven defendants. Whether the claims survive a bar by the statute of limitations or summary judgment is an issue for another day.

## 2. INSTRUCTIONS FOR FURTHER LITIGATION OF MEDICAL CLAIMS

The Court now orders the remaining defendants to file a *Martinez* report[2] and dispositive motion *on the remaining claims only* as follows:

(A) If Defendant wishes to assert the affirmative defense of Plaintiff's failure to exhaust administrative remedies in a grievance process, Defendant must,

(i) within 90 days, prepare and file a *Martinez* report limited to the exhaustion issue; and,

(ii) within 120 days, file a separate summary judgment motion, with a supporting memorandum.

(B) If Defendant chooses not to rely on the defense of failure to exhaust and wish to pierce the allegations of the Complaint, Defendant must,

(i) within 90 days, prepare and file a *Martinez* report addressing the substance of the complaint; and,

---

[2] *See Martinez v. Aaron,* 570 F.2d 317 (10th Cir. 1978) (approving district court's practice of ordering prison administration to prepare report to be included in pleadings in cases when prisoner has filed suit alleging constitutional violation against institution officials).

In *Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987), the Tenth Circuit explained the nature and function of a *Martinez* report, saying:

> Under the *Martinez* procedure, the district judge or a United States magistrate [judge] to whom the matter has been referred will direct prison officials to respond in writing to the various allegations, supporting their response by affidavits and copies of internal disciplinary rules and reports. The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims. This, of course, will allow the court to dig beneath the conclusional allegations. These reports have proved useful to determine whether the case is so devoid of merit as to warrant dismissal without trial.

*Id.* at 1007.

(ii) within 120 days, file a separate summary judgment motion, with a supporting memorandum.

(C) If Defendant wishes to seek relief otherwise contemplated under the procedural rules (e.g., requesting an evidentiary hearing), Defendant must file an appropriate motion within 90 days of filing their answer.

Plaintiff is notified that Plaintiff may, within 30 days of its filing, respond to a *Martinez* report if desired. Plaintiff is further notified that Plaintiff must, within 30 days of its filing, respond to the summary-judgment motion. Plaintiff is finally notified that, when Defendant moves for summary judgment, Plaintiff may not rest upon the mere allegations in the complaint. Instead, as required by Federal Rule of Civil Procedure 56(e), to survive a motion for summary judgment Plaintiff must allege specific facts, admissible in evidence, showing that there is a genuine issue remaining for trial.

**ORDER**

**IT IS THEREFORE ORDERED** that:

(1) Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part. (Doc. No. 30.) Defendant Garden is **DISMISSED** with prejudice. However, Plaintiff has succeeded in stated a claim against each of the remaining defendants: Coombs, Clark, Jeffries, Merrill, Roberts, Tubbs, and Stone.

(2) Plaintiff must within thirty days **SHOW CAUSE** why claims against Defendants Tubbs, Clark, Jeffries, and Stone, in section I above should not be dismissed under the applicable statute of limitations.

(3) Plaintiff's claim of retaliation is **DISMISSED** because it fails to state a claim upon which relief may be granted.

(4) Remaining Defendants must within 90 days file a *Martinez* report and summary-judgment motion.

(5) When served with a summary-judgment motion, Plaintiff must submit a response within 30 days of the motion's filing date. For Plaintiff's information and convenience, the Court has attached the procedural rules governing summary-judgment practice.

(6) **NO EXTENSIONS OF TIME WILL BE GRANTED.**

    DATED this 26th day of September.

                                            BY THE COURT:

                                            CLARK WADDOUPS
                                            United States District Court

# Fed Rule of Civil Procedure 56

Current through changes received December 12, 2017.

## Rule 56. Summary Judgment

- **(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
- **(b) Time to File a Motion.** Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.
- **(c) Procedures.**
  - (**1**) *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
    - (**A**) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
    - (**B**) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
  - (**2**) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
  - (**3**) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
  - (**4**) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.
- **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
  - (**1**) defer considering the motion or deny it;
  - (**2**) allow time to obtain affidavits or declarations or to take discovery; or
  - (**3**) issue any other appropriate order.
- **(e) Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
  - (**1**) give an opportunity to properly support or address the fact;
  - (**2**) consider the fact undisputed for purposes of the motion;
  - (**3**) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
  - (**4**) issue any other appropriate order.
- **(f) Judgment Independent of the Motion.** After giving notice and a reasonable time to respond, the court may:
  - (**1**) grant summary judgment for a nonmovant;
  - (**2**) grant the motion on grounds not raised by a party; or
  - (**3**) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.
- **(g) Failing to Grant All the Requested Relief.** If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.
- **(h) Affidavit or Declaration Submitted in Bad Faith.** If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

# SUMMARY JUDGMENT: MOTIONS AND SUPPORTING MEMORANDA

**(a) Summary Judgment Motions and Memoranda.**

A motion for summary judgment and the supporting memorandum must clearly identify itself in the case caption and introduction.

**(b) Motion; Requirements and Supporting Evidence.**

A motion for summary judgment must include the following sections and be supported by an Appendix of Evidence as follows:

(1) Introduction and Relief Sought: A concise statement of each claim or defense for which summary judgment is sought, along with a clear statement of the relief requested. The parties should endeavor to address all summary judgment issues in a single motion. If a party files more than one motion, the court may strike the motion and that require the motions be consolidated into a single motion.

(2) Background (Optional): Parties may opt to include this section to provide background and context for the case, dispute, and motion. If included, this section should be placed between the Relief Sought section and the Statement of Undisputed Material Facts section. Factual summaries in the background section need not be limited to undisputed facts and need not cite to evidentiary support.

(3) Statement of Undisputed Material Facts: A concise statement of the undisputed material facts that entitle the moving party to judgment as a matter of law. Only those facts necessary to decide the motion should be included in this section. The moving party must cite with particularity the evidence in the Appendix of Evidence that supports each factual assertion.

(4) Argument: An explanation for each claim or defense, of why, under the applicable legal principles, the moving party is entitled to judgment as a matter of law. The arguments should include a statement of each claim or defense on which the party is seeking summary judgment and supporting authorities. Any factual citations must cite to the Appendix of Evidence, not the Statement of Undisputed Material Facts.

(5) Appendix of Evidence: All evidence offered in support of the motion must be submitted in an attached appendix. The appendix should be proceded by a captioned cover-page index that lists each exhibit by number, includes a description or title, and if the exhibit is a document, identifies the source of the document. The appendix should include complete copies of all exhibits, including complete copies of depositions, to the extent possible. In cases where lengthy depositions are relied upon, the moving party need not submit the entire deposition. However, the moving party must submit at least four (4) pages before and four (4) pages after the cited depostition transcript pages(s), for a total of at least nine (9).

**(c) Opposition Memorandum Requirements and Supporting Evidence.**

A memorandum in opposition to a motion for summary judgment must include the following sections and, if applicable, be supported by an Appendix of Evidence as follows:

(1) Introduction: A concise summary explaining why summary judgment should be denied.

(2) Background (Optional): Parties may opt to include this section to provide background and context for the case, dispute, and motion. If included, this section should be placed between the Introduction section and the Response to Statement of Undisputed Material Facts section. Factual summaries in the background
section need not be limited to undisputed facts and need not cite to evidentiary support.

(3) Response to Statement of Undisputed Material Facts: A restatement of each fact the opposing party contends is genuinely disputed or immaterial, a concise statement explaining why the fact is disputed or immaterial, and a citation with particularity to the evidence upon which the non-moving party relies to refute that fact [8]. Any factual citations must reference the appropriate party's Appendix of Evidence, rather than either party's factual statements or responses. The nonmoving party should not restate all of the moving party's statement of facts and should only respond to those facts for which there is a genuine dispute of material fact.

(4) Statement of Additional Material Facts (if applicable): If additional material facts are relevant to show that there is a genuine dispute of material fact, state each such fact and cite with particularity the evidence that supports the factual assertion from the appropriate party's Appendix of Evidence.

(5) Argument: An explanation for each claim or defense of why, under the applicable legal principles, summary judgment should be denied. Any factual citations must cite to the appropriate party's Appendix of Evidence, rather than either party's factual statements or responses.

(6) Appendix of Evidence: All evidence offered in opposition to the motion must be submitted in an appendix, utilizing the same procedure set out in DUCivR 56-1(b)(5). Counsel must make every effort not to duplicate evidence submitted by the other party. The appendix should be preceded by a cover page index that lists each exhibit by number, includes a description or title and, if the exhibit is a document, identifies the source of the document.

**(d) Reply.**

The moving party may file a reply memorandum. In the reply, a moving party may cite only additional evidence not previously cited in the opening memorandum to rebut a claim that a material fact is in dispute. Otherwise, no additional evidence may be cited in the reply memorandum, and if cited, the court will disregard it.

**(e) Citations of Supplemental Authority.**

When pertinent and significant authorities come to the attention of a party after the party's memorandum in support of or in opposition to a summary judgment motion has been filed, or after oral argument but before decision, a party may promptly file a notice with the court and serve a copy on all counsel, setting forth the citations. There must be a reference either to the page of the memorandum or to a point argued orally to which the citations pertain, but the notice must state, without argument, the reasons for the supplemental citations. Any response must be made, filed promptly, and be similarly limited.

**(f) Failure to Respond.**

Failure to respond timely to a motion for summary judgment may result in the court's granting the motion without further notice, provided the moving party has established that it is entitled to judgment as a matter of law.

**(g) Length of Memoranda and Filing Times.**

(1) A motion for summary judgment and a memorandum in opposition must not exceed 10,000 words, or in the alternative, forty (40) pages. A reply brief cannot exceed 5,000 words, or in the alternative, twenty (20) pages. If the document exceeds the page limit, then the party must certify compliance with the word-count limit. This limitation includes the following items: introduction, relief sought, background, statement of undisputed material facts, response to statement of undisputed material facts, statement of additional material facts, argument, and conclusion. This limitation excludes the following items: face sheet, table of contents, table of authorities, signature block, certificate of service, and appendix. Motions to file an overlength brief are discouraged and will be granted only upon a showing of good cause and exceptional circumstances, as set forth in DUCivR 7-1(e). Â

(2) Filing times and length of memoranda are governed by DUCivR 7-1.