IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROBERT R. BAKER,<br><br>                              Plaintiff,<br><br>v.<br><br>SIDNEY ROBERTS et al.,<br><br>                              Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:15-CV-668-CW<br><br>District Judge Clark Waddoups |

Plaintiff, Robert R. Baker, asserts that Defendants Tubbs, Clark, Jeffries, Stone, Roberts, Coombs, and Merrill violated his right to be free of cruel and unusual punishment under the United States Constitution's Eighth Amendment. *See* 42 U.S.C.S. § 1983 (2020). Specifically, he contends Defendants provided inadequate medical care during his stay at Utah State Prison (USP). (ECF. No. 13.)

Defendants filed a *Martinez* report[1] with medical and other records and declarations as to Plaintiff's treatment. (ECF Nos. 49-50.) Plaintiff's evidentiary response to the *Martinez* report

---

[1] *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (approving district court's practice of ordering prison administration to prepare report to be included in pleadings in cases when prisoner has filed suit alleging constitutional violation against institution officials).
  In *Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987), the Tenth Circuit explained a *Martinez* report's function:
> Under the *Martinez* procedure, the district judge . . . to whom the matter has been referred will direct prison officials to respond in writing to the various allegations, supporting their response by affidavits and copies of internal disciplinary rules and reports. The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims. This, of course, will allow the court to dig beneath the conclusional allegations. These reports have proved useful to determine whether the case is so devoid of merit as to warrant dismissal without trial.

*Id.* at 1007.

primarily consists of receipts and medical documents--none of which fall within relevant dates regarding remaining claims.[2] (ECF No. 57.) The Court has examined them all thoroughly.

Defendant now moves for summary judgment based on statute of limitations and qualified immunity.

## I. STATUTE OF LIMITATIONS

"Utah's four-year residual statute of limitations . . . governs suits brought under [§] 1983." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995). And "[a]ctions under § 1983 normally accrue on the date of the [alleged] constitutional violation," *Garza v. Burnett*, 672 F.3d 1217, 1219 (10th Cir. 2012), as § 1983 claims "accrue when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Workman v. Jordan*, 32 F.3d 475, 482 (10th Cir. 1994). The Court notes that "[a] plaintiff need not know the full extent of his injuries before the statute of limitations begins to run," *Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994); *see also Romero v. Lander*, 461 F. App'x 661, 669 (2012) (1983 case), and "it is not necessary that a claimant know *all* of the evidence ultimately relied on for the cause of action to accrue." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993) (emphasis in original).

This action was filed on September 17, 2015; thus, any claims accruing before September 11, 2011 could be barred by the statute of limitations.

---

[2] The Court also carefully reviewed all documents attached to Plaintiff's original complaint. (ECF No. 5.) Those documents were mostly irrelevant grievance forms and were inapplicable date-wise. (*Id*.) Other relevant documents were almost entirely repetitive of evidence found in Defendants' *Martinez* report. (*Id*.; ECF No. 49-50.)

The Court may raise the statute of limitations affirmative defense *sua sponte* when it is "clear from the face of the complaint [and is] rooted in adequately developed facts." *Fratus*, 49 F.3d at 674-75. This is true as to the following claims:

(1) **Defendant Kennon Tubbs**: Allegation that, on October 4, 2005, Tubbs consulted Plaintiff regarding neuropathy and pressure sores, then told Plaintiff that he would have to buy shoes at the commissary instead of providing special shoes.

(2) **Defendant Logan Clark**: Allegation that, before October 28, 2010, Clark refused to provide medical sports shoe to Plaintiff. (Inmate Grievance Form, Am. Compl., ECF No. 13, at 58.)

(3) **Defendant Terry Jeffries**: Allegation that, on October 28, 2010, Jeffries refused to provide authorization for well-fitted shoes. (*Id.*)

(4) **Defendant Sam Stone**: Allegation that, on May 5, 2010, Stone delivered ill-fitting slippers instead of well-fitted shoes. Indeed, "Officer Stone refused to supply well-fitted shoes, claiming inmates were selling them for commissary." (Am. Compl, ECF No. 13, at 14.)

"When a district court believes it is likely that a pro se prisoner's § 1983 complaint is dismissible on the basis of the state's statute of limitations, the court may issue a show cause order giving the plaintiff an opportunity to explain why the statute of limitations should not be tolled." *Arroyo v. Starks*, 589 F.3d 1091, 1097 (10th Cir. 2009).

The Court did so here, requiring Plaintiff to show cause why the statute of limitations should be tolled as to only the four claims and defendants listed (1) through (4) in this section. (ECF No. 45, at 2-3.)

Plaintiff responded with the sole argument that the continuing-violation doctrine brings the four claims and defendants within the statute of limitations: "This delay of treatment was

continued and perpetuated for 8 1/2 years by all of the defendants in this case. It was one continuous affront to plaintiff' physical safety by the defendants in the course of 8 plus years." (ECF No. 46, at 2.)

The Tenth Circuit has not yet decided whether the continuing-violation doctrine applies to § 1983 claims. *See Vasquez v. Davis*, 882 F.3d 1270, 1277 (10th Cir. 2018); *Colby v. Herrick*, 849 F.3d 1273, 1280 (10th Cir. 2017) (assuming "[f]or the sake of argument" that continuing violation doctrine applies to § 1983 claims, but concluding doctrine would not save time-barred claim in that case). The question need not be decided here either, because--even if the doctrine were applied--it would not save the four claims. That is because the continuing-violation doctrine, as defined by the Tenth Circuit, would apply only when a particular defendant allegedly committed wrongful acts within, as well as outside, the limitations period. *Vasquez*, 882 F.3d at 1277; *see also Shomo v. City of New York*, 579 F.3d 176, 183-84 (2d Cir. 2009). Here, none of these Defendants--Tubbs, Clark, and Stone--had any alleged interactions with Plaintiff within the four-year period preceding his filing of this action. And Defendant Jeffries did not have further alleged interactions about shoes regarding the assertion that, on October 28, 2010, Defendant Jeffries refused to provide authorization for well-fitted shoes. Even if the continuing-violation doctrine were to be applied here, then, it would not save Plaintiff's claims against the Defendants Tubbs, Clark, and Stone, and Defendant Jeffries as to the October 28, 2010 allegation.

Defendants Tubbs, Clark and Stone are therefore dismissed from this case. And the October 28, 2010 claim against Defendant Jeffries is also dismissed from this case.

## II. QUALIFIED IMMUNITY

### A. REMAINING DEFENDANTS AND CLAIMS

The only remaining defendants and claims are allegations that: **(a)** on February 19, 2013, Plaintiff consulted **Defendant Roberts** "about the loss of his medications and all of his clearances being revoked," but "Roberts refused to renew plaintiff's medication or reinstate his medical clearances," (Am. Compl., ECF No. 13, at 17); **(b)** around February 25, 2013, **Defendant Jeffries** withheld vital medications from Plaintiff, (Inmate Grievance Form, Am. Compl., ECF No. 13, at 65); **(c)** in Spring of 2013, **Defendant Coombs** cut open a pressure sore, causing infection; and, **(d)** on July 22, 2013, **Defendant Merrill** examined "serious pressure ulcer caused by ill-fitting prison issued 'wide shoes' . . . and denied the use of shower shoe for ulcerated foot," (*id*. at 20).

### B. QUALIFIED-IMMUNITY STANDARD

When determining whether to grant summary judgment, this Court must examine the evidence filed by the parties to determine whether any genuine issues of material fact exist and, if not, correctly apply relevant substantive law to the undisputed facts. *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018).

> Individual defendants sued for damages under § 1983 may raise a defense of qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks omitted). This standard arises from balancing two important but contrary interests. On the one hand, "an action for damages may offer the only realistic avenue for vindication of constitutional guarantees." *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). On the other hand, exposing public officials to liability for damages presents its own "social costs[,] includ[ing] the expenses of litigation, the

> diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Id*. And, perhaps most significantly, "there is the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible public officials, in the unflinching discharge of their duties." *Id*. (brackets and internal quotation marks omitted).
>
> "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks omitted). Thus, when a defendant has raised qualified immunity as a defense, the plaintiff must establish (1) that the defendant's action violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions. *See Thomson v. Salt Lake City*, 584 F.3d 1304, 1312 (10th Cir. 2009). Under this test, "immunity protects all but the plainly incompetent or those who knowingly violate the law." *Kisela*, 138 S. Ct. at 1152 (internal quotation marks omitted).
>
> The test imposes a "heavy two-part burden." *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007) (internal quotation marks omitted). If the plaintiff fails to satisfy either part of the two-part inquiry, a court must grant the defendant qualified immunity. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The court has discretion to decide which of the two prongs of the qualified-immunity analysis to address first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment...." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted).

*Id*. at 1167-68.

To educate Plaintiff about his duty in responding to a summary-judgment motion, the Court stated in an order,

> Plaintiff is notified that if Defendant moves for summary judgment Plaintiff may not rest upon the mere allegations in the complaint. Instead, as required by Federal Rule of Civil Procedure 56(e), to survive a motion for summary judgment Plaintiff must allege specific facts, admissible in evidence, showing that there is a genuine issue remaining for trial.

6

(Doc. No. 45, at 14.) The Court also provided Plaintiff with the full texts of Federal Rule of Civil Procedure 56 and District of Utah Local Civil Rule 56-1. (*See id*. at 16-19.)

Based on the undisputed material facts below, the Court concludes that, under the qualified-immunity defense, Plaintiff has not established the first necessary prong of his burden: that Defendant's actions violated a federal constitutional right.

### C. UNDISPUTED MATERIAL FACTS

• At relevant time, Plaintiff was Utah Department of Corrections (UDOC) inmate. (ECF No. 13.)

• At relevant time, Defendant Jeffries was UDOC physician assistant (PA). (ECF No. 49-12, at 2.)

• At relevant time, Defendant Roberts was UDOC physician. (ECF No. 49-14, at 2.)

• At relevant time, Defendant Coombs was UDOC PA. (ECF No. 49-15, at 2.)

• At relevant time, Defendant Merrill was UDOC PA. (ECF No. 49-16, at 2.)

• 1/18/13 - Defendant Jeffries examined Plaintiff for "refill of Sudafed and also ibuprofen . . . renewal for clearances for lower bunk, lower tier, extra pillow, and shower chair." (ECF Nos. 49-12, at 5; 50-2, at 834, 841.) Jeffries refilled Plaintiff's Motrin prescription, noted too early to refill Sudafed, and re-requested clearances. (ECF Nos. 49-12, at 6; 50-2, at 841.)

• 2/19/13 - Defendant Roberts did not reorder Sudafed for Plaintiff or notice any foot sores. (ECF No. 49-14, at 4-5.) As to Sudafed, Defendant Roberts told Plaintiff "Sudafed plays no role in the treatment of asthma [and i]f he has trouble with asthma [Plaintiff] should come to the infirmary immediately." (ECF Nos. 49-14, at 5; 50-2, at 835.) Defendant Roberts noted "clearance requests for size 13 medical shoes, a bottom bunk clearance, a bottom tier, and a shower chair had been submitted . . . to the clearance review committee." (*Id*. at 5-6.)

7

- 2/20/13 - Defendant Roberts noted in Plaintiff's "medical charts . . . that certain clearances should be revisited pending confirmation of [multiple sclerosis (MS)] diagnosis." (*Id*. at 6.)
- 2/25/13 - No medical records around this date show meeting with Defendant Jeffries. (ECF No. 50-2, at 829-31.)
- 3/5/13 - Defendant Roberts prescribed Plaintiff pseudoephedrine for "allergic rhinitis." (ECF No. 50-2, at 827-28.)
- 3/18/13 - Defendant Roberts prescribed Plaintiff diphenhydramine for "insomnia with sleep apnea." (ECF No. 50-2, at 824-26.)
- 3/25/13 - Defendant Roberts MRI "to look for lesions associated with MS." (ECF Nos. 49-14, at 5; 50-1, at 67.)
- 3/25-29/13 - Defendant Roberts resubmitted Plaintiff's "clearances for a bottom bunk, a shower chair, and size 13 orthopedic shoes," which were "all denied by the Clearance Committee." (ECF Nos. 49-14, at 7; 50-2, at 817-825.) Defendant Roberts had "no authority to approve or deny the medical clearances that the committee reviews." (ECF No. 49-14, at 7.)
- Spring 2013 - Defendant Coombs did not have medical visit with Plaintiff in which he "cut open a pressure sore." (ECF No. 49-15, at 2.)
- 4/17/13 - While showing "no lesions consistent with MS," MRI done at University of Utah was stopped early because Plaintiff "claimed claustrophobia." (ECF Nos. 49-14, at 6; 50-1, at 67-70 50-2, at 811.)
- 6/29/13 - Second MRI done at University "also confirmed no lesions or scarring consistent" with MS. (ECF Nos. 49-14, at 6; 50-2, at 792.)

- 7/22/13 - Defendant Merrill examined Plaintiff's foot wound. (ECF Nos. 49-16, at 2; 50-2, at 787.) During visit, Plaintiff refused dressing changes for foot blister. (ECF Nos. 49-16, at 2; 50-2, at 786-87.) Merrill saw "no drainage erythema, odor, or other symptoms of infection" and advised Plaintiff "to keep the blister clean." (ECF Nos. 49-16, at 3; 50-2, at 787.) Plaintiff was "given band aids but told to let [blister] air out part of the day." (ECF Nos. 49-16, 3; 50-2, at 787.) Plaintiff also given "Bacitracin to apply." (ECF No. 50-2, at 787.) Merrill "submitted a clearance request [to the medical clearance committee] for [Plaintiff] for crutches and a pair of shower shoes." (ECF Nos. 49-16, at 3; 50-2, at 787.) Merrill advised Plaintiff to follow up "if not improving." (ECF No. 50-2, at 787.) "[T]he clearance committee denied the request for shower shoes." (ECF No. 49-16, at 3.) Merrill had "no say in whether a clearance request that [he] submit[ted] is approved by the clearance committee." (*Id.*)
- 9/28/16 - Plaintiff signed Amended Complaint. (ECF No. 13, at 30.)

### D. ANALYSIS

To succeed under the Eighth Amendment, Plaintiff must demonstrate acts or omissions harmful enough to show deliberate indifference that offends "'evolving standards of decency.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted). That amendment proscribes only deliberate indifference constituting the "'unnecessary and wanton infliction of pain.'" *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion)). Moreover, Plaintiff must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to *serious* medical needs." *Id.* at 104 (emphasis added). Plaintiff needs to show that Defendants' actions were more than negligent. After all, negligent failure to give sufficient medical care, even touching medical malpractice, does not equal a constitutional violation. *Id.* at 106.

*Estelle*'s deliberate-indifference standard has an objective component asking whether the alleged deprivation is "sufficiently serious," and a subjective component asking whether the defendant official "knows of and disregards an *excessive* risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). The subjective component questions whether prison officials acted with a "sufficiently culpable state of mind." *Clemmons v. Bohannon*, 956 F.2d 1523, 1525-26 (10th Cir. 1992). "[E]ven if a prison official has knowledge of a substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate the risk." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Thus, Plaintiff must show he suffered from a serious condition that Defendants knew about and ignored, and that by ignoring Plaintiff's condition, or failing to take reasonable steps to alleviate the risk, Defendants caused Plaintiff serious physical harm or the unnecessary, wanton infliction of pain.

Here, Plaintiff's claims fail because Defendants did not disregard substantial risk of serious harm to Plaintiff's health. Rather, based on uncontroverted evidence, Defendants answered each of Plaintiff's numerous medical requests and referred him out for testing and treatment as deemed necessary.

When the only dispute about a prisoner's medical treatment regards adequacy, "'courts are generally reluctant to second guess [professional] medical judgments.'" *Maez v. Merrill*, No. 2:07-CV-986 TC, 2008 U.S. Dist. LEXIS 72842, at *6-7 (D. Utah September 23, 2008) (unpublished) (quoting *Ferranti v. Moran*, 618 F.2d 888, 891 (1st Cir. 1980)); *see Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972). Mere disagreement between a prisoner and prison medical staff as to diagnosis or treatment does not support a deliberate-indifference

claim. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993); *LeDoux v. Davies*, 961 F.2d 1536, 1536 (10th Cir. 1992). Eighth Amendment violations occur only when medical treatment is so grossly incompetent, inadequate, or excessive as to "'shock the conscience or be intolerable to fundamental fairness.'" *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citation omitted). An inmate's belief that he should have been treated differently does not show "deliberate indifference." *Scott v. Gibson*, 37 F. App'x 422, 423 (10th Cir. 2002) (unpublished) (citation omitted).

Here, Plaintiff's claims are, at best, a "difference of opinion" as to treatment during a relatively short time span (February to July 2013). *See Olson* 9 F.3d at 1477. At worst, Plaintiff's claims are specious. From the moment Defendants first saw Plaintiff, they jumped to action, examining Plaintiff, prescribing medication and medical equipment, consulting with outside specialists, and tailoring a special treatment plan to Plaintiff's specific needs. The extensive medical records (1,500-plus pages) before the Court reveal that on a regular basis and whenever Plaintiff reported symptoms, his treatment was reviewed, exams done, observations made, testing arranged, prescriptions offered, and medical equipment and wound-care conscientiously requested or provided.

More specifically, first, regarding **Defendant Roberts'** treatment of Plaintiff on February 19, 2013, contemporaneous medical records before the Court indicate that Roberts did not--as Plaintiff alleges--"refuse to renew plaintiff's medication or reinstate his medical clearances." (Am. Compl., ECF No. 13, at 17.) Instead, Roberts told Plaintiff "that Sudafed plays no role in the treatment of asthma [and i]f he has trouble with asthma [Plaintiff] should come to the infirmary immediately." (ECF Nos. 49-14, at 5; 50-2, at 835.) Roberts noted that Plaintiff's

"clearance requests for size 13 medical shoes, a bottom bunk clearance, a bottom tier, and a shower chair had been submitted . . . to the clearance review committee." (*Id.* at 5.) The next day, Roberts noted in Plaintiff's "medical charts . . . that certain clearances should be revisited pending confirmation of [multiple sclerosis (MS)] diagnosis." (*Id.* at 6.) Thirteen days later, on March 5, 2013, Roberts prescribed Plaintiff pseudoephedrine for "allergic rhinitis." (ECF No. 50-2, at 827-28.) Also in March 2013, Roberts prescribed Plaintiff diphenhydramine for "insomnia with sleep apnea," (ECF No. 50-2, at 824-26); "ordered an MRI exam . . . to look for lesions associated with MS," (ECF Nos. 49-14, at 5; 50-1, at 67); and resubmitted Plaintiff's "clearances for a bottom bunk, a shower chair, and size 13 orthopedic shoes," which were "all denied by the Clearance Committee," (ECF Nos. 49-14, at 7; 50-2, at 817-825). It is undisputed that Roberts had "no authority to approve or deny the medical clearances that the committee reviews." (ECF No. 49-14, at 7.) These undisputed facts show that Roberts indeed prescribed medication and requested clearances, which is the exact opposite of Plaintiff's failed allegations against Roberts.

Second, more specifically regarding **Defendant Jeffries'** treatment of Plaintiff on February 25, 2013, contemporaneous medical records indicate that Jeffries did not withhold vital medications from Plaintiff. (*See* Inmate Grievance Form, Am. Compl., Doc. No. 13, at 65.) Indeed, no medical records around this date show Plaintiff meeting with Jeffries. (ECF No. 50-2, at 829-31.) The closest medical visit that Plaintiff had with Jeffries came on January 18, 2013, when Jeffries examined Plaintiff regarding "refill of Sudafed and also ibuprofen . . . renewal for clearances for lower bunk, lower tier, extra pillow, and shower chair." (ECF Nos. 49-12, at 5; 50-2, at 834, 841.) Jeffries refilled Plaintiff's Motrin prescription, noted it was too early to refill

12

Sudafed, and re-requested his clearances. (ECF Nos. 49-12, at 6; 50-2, at 841.) This undisputed evidence also directly contravenes Plaintiff's allegation about Jeffries, which is unfounded.

Third, more specifically regarding **Defendant Coombs's** treatment of Plaintiff in Spring 2013, undisputed evidence indicates that Coombs did not cut open Plaintiff's pressure sore, causing an infection. (ECF No. 49-15, at 2.) This directly contradicts Plaintiff's allegation about Coombs, which is unfounded.

Finally, more specifically regarding **Defendant Merrill's** treatment of Plaintiff on July 22, 2013, undisputed evidence indicates that Merrill did not deny "use of shower shoe for ulcerated foot." (ECF No. 13, at 20.) Instead, Merrill "submitted a clearance request [to the medical clearance committee] for [Plaintiff] for crutches and a pair of shower shoes." (ECF Nos. 49-16, at 3; 50-2, at 787.) Merrill advised Plaintiff to follow up "if not improving." (ECF No. 50-2, at 787.) "[T]he clearance committee denied the request for shower shoes." (ECF No. 49-16, at 3.) Merrill had "no say in whether a clearance request that [he] submit[ted] is approved by the clearance committee." (*Id*.) And, thus, Plaintiff's allegation against Merrill is also baseless.

Plaintiff's allegations--against these defendants regarding these specific times--that he did not receive adequate and necessary medical care boil down to nothing more than Plaintiff's inaccurate factual assertions and differing opinion as to the judgments made by medical professionals who continually evaluated Plaintiff's conditions during the time in question. Plaintiff's medical records clearly show his concerns and requests were consistently addressed.

As a matter of law, treatment based on a professional's medical judgment, even if it is not what an inmate wants, does not rise to the level of deliberate indifference. *Self v. Crum*, 439 F.3d 1227, 1232-33 (10th Cir. 2006) ("[T]he subjective component is not satisfied, absent an

13

extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist . . . . [W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law."). Also, when records show an inmate has been monitored, attended to, and treated often, the inmate cannot show deliberate indifference. *Wingfield v. Robinson*, No. 10-CV-01375, 2011 U.S. Dist. LEXIS 125825, at *32 (D. Colo. August 10) (missing subjective intent for deliberate indifference when defendants responded to grievances, examined plaintiff, and prescribed treatment more than fifteen times). Here, Plaintiff was consistently evaluated by Defendants and others. And, Plaintiff's medical records show that Plaintiff received ongoing medical help from Defendants and others for each medical issue raised.

As noted, Plaintiff sues Defendants because he misremembers the facts and disagrees with medication dosages and decisions during snapshots in time over the course of more than a decade of treatment. But, "informed judgment" as to appropriate treatment does not amount to deliberate indifference. *Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986). Here, even if Plaintiff could prove that alternative treatment was medically appropriate, Plaintiff still cannot meet his burden of showing Defendants were unreasonable in relying on their own judgment and evaluations and administering treatment accordingly.

The undisputed material facts show Defendants were not deliberately indifferent to Plaintiff's medical treatment. Thus, Defendants' actions did not violate a federal constitutional right and they are due qualified immunity.

## III. CONCLUSION

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**, (ECF No. 54). The inadequate-medical-care claims are **DISMISSED WITH PREJUDICE**. All other Defendants and claims having been dismissed in past orders, this action is **CLOSED**.

Dated this 5th day of March, 2020.

BY THE COURT:

_____
JUDGE CLARK WADDOUPS
United States District Court